

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*  (203)821-3700
*157 Church Street, 25th Floor*  *Fax (203) 773-5376*
*New Haven, Connecticut 06510*  *www.justice.gov/usao/ct*

October 13, 2017

Matthew Maddox, Esq.,
The Maddox Law Firm, LLC
125 Elm Street
New Canaan, CT 06840

    Re:   *United States v. Erickson*
           Case No. 17 CR 47 (SRU)

Dear Attorney Maddox:

    This letter confirms the plea agreement between your client, Ms. Jean S. Erickson (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

    Ms. Erickson agrees to plead guilty to count Thirty-Eight of the Indictment charging her with money laundering conspiracy, in violation of Title 18 U.S.C. § 1956(h).

    The defendant understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

1. That two or more persons entered into an agreement to work together to accomplish a common and unlawful plan or object of the conspiracy as charged in the indictment, that is:

   a. to engage in a financial transaction or series of transactions knowingly involving funds derived from some form of specified unlawful activity and knowing the transaction was designed in whole or in part to conceal the nature, location, source ownership or control of the funds; and/or

*Matthew Maddox, Esq.*
*Page 2*

      b. knowingly to engage or attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 which property was derived from a specified unlawful activity.

2. That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the specific intent to further the unlawful purpose.

## THE PENALTIES

This offense carries a maximum penalty of 20 years of imprisonment and a $500,000 fine. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than three years to begin after imprisonment. The defendant understands that, should she violate any condition of supervised release, she may be required to serve a further term of imprisonment of up to 2 years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $500,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment on or before the date of sentencing unless she establishes an inability to pay on or before the date of sentencing through the financial disclosure to the U.S. Probation Office as part of the presentence investigation and report, in which case the defendant agrees to pay it as soon as practicable.

The defendant is also subject to restitution, as discussed below. Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572 (h), (*i*) and § 3612(g).

### Restitution

In addition to the other penalties provided by law, the Court shall also order that the defendant make restitution under 18 U.S.C. §§ 3663, 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of §§ 3663, 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution in the amount of $16,900, which represents the portion of the funds received by the defendant from the funds defrauded from the victim related to the underlying specified unlawful activity as set forth in paragraph 54 of Count Thirty-Eight of the indictment. The MVRA directs sentencing courts to "order... that the defendant make restitution to the victim

*Matthew Maddox, Esq.*
*Page 3*

of the offense." 18 U.S.C. § 3663A(a)(1). The term "victim," as relevant here, is defined as: "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." *Id.* § 3663A(a)(2). *See United States v. v. Gushlak*, 728 F.3d 184, 194 (2d Cir. 2013). The defendant agrees to make such restitution to the victim and to do so as ordered by the Court, based on a schedule of payments to be determined by the Court at sentencing.[1]

Forfeiture

In connection with her plea of guilty, and pursuant to 18 U.S.C. § 982(a)(1) and based on her commission of the illegal acts of money laundering in violation of Title 18 U.S.C. § 1956(h), as charged in Count Thirty-Eight of the Indictment, the defendant agrees to forfeit all interests or any claim to an interest in each of the following assets:

(i) A sum of money equal to the total value of all assets that are forfeitable pursuant to 18 U.S.C. § 982(a)(1) and based on her commission of the illegal acts committed in violation of Title 18 U.S.C. § 1956(h), namely $16,900. The defendant acknowledges that the above referenced amount is subject to forfeiture as property involved in, or traceable to property involved in, illegal money laundering transactions giving rise to forfeiture.

(ii) Two diamond rings purchased from Tiffany & Co. using cashier's check 8542139 in the amount of $21,469.19 which constitutes proceeds of or is derived from proceeds traceable to violations of 18 U.S.C. § 1957.

The defendant agrees to take all steps as requested by the United States to pass clear title to all of the forfeitable assets to the United States, to share truthful information with agents and representatives of the United States about any facts and claims concerning the assets, and to testify truthfully in any judicial forfeiture proceeding.

The defendant agrees to waive all interests in each of the assets listed above (hereinafter, the "Forfeitable Assets"), in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for each of the forfeitable assets, and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that she understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise her of

---

[1] *See, e.g., United States v. Thompson*, 39 F.3d 1103, 1105 (10th Cir. 1994) ("when a defendant knowingly bargains to make full restitution in exchange for dismissal of other pending counts of an indictment, it should be presumed the bargain was made with its consequences in mind [and] it should be presumed a defendant in those circumstances considered its financial burden a fair exchange for the penal advantage gained"). The MVRA directs the Attorney General to ensure that "in all plea agreements…consideration is given to requesting that the defendant provide full restitution to all victims of all charges contained in the indictment or information, without regard to the counts to which the defendant actually pleaded." 18 U.S.C. § 3551 Mandatory Victim Restitution, Note (1).

*Matthew Maddox, Esq.*
*Page 4*

this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time her guilty plea is accepted.

The defendant further agrees that she shall not, directly or indirectly, sell, assign, transfer, convey, donate, convert, pledge, encumber, collateralize, liquidate, fail to conduct ordinary maintenance of, diminish the value of, or otherwise dispose of, the property listed above (*i.e.*, the "Forfeitable Assets"), except upon prior approval of the Court upon notice to the United States and an opportunity for the United States to be heard. The defendant further agrees that the United States is authorized to take actions, if necessary, to secure the availability of said assets for forfeiture.

Defendant understands that, if any of the above-described property, as a result of any act or omission of defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property. In the event that any of the aforementioned conditions (a) through (e) occur with respect to the above-described property, defendant will not oppose or object to the United States' efforts to recover "substitute assets" as provided herein.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of the above-listed assets covered by this agreement. The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

The defendant further agrees to enter into a Stipulated Forfeiture Agreement (the "Forfeiture Agreement"), in which she shall stipulate and agree to the civil forfeiture of all of the forfeitable assets. Defendant agrees to execute and enter into that Forfeiture Agreement on or before the date that she enters her guilty plea. Defendant agrees to execute and enter into any other documents and agreements necessary to implement the terms of the Forfeiture Agreement.

The defendant hereby stipulates and agrees, and shall stipulate and agree in the separate Forfeiture Agreement and in any civil, criminal, or administrative proceedings involving the forfeitable assets, that:

(i) she gives up any rights, any title, or any claim of interest in the Forfeitable Assets, defined herein;
(ii) the Forfeitable Assets consist of a sum of money and the diamond rings as described above;
(iii) the Forfeitable Assets are forfeitable pursuant to 21 U.S.C. § 853(p), as incorporated by 18, U.S.C. § 982(b), in accordance with 18, U.S.C. § 982(a)(1), and pursuant to 18, U.S.C. § 981(a)(1)(C) and 28, U.S.C. § 2461(c) in accordance with 18 U.S.C. § 981(a)(1) as incorporated by 28 U.S.C. § 2461(c), and pursuant to Rule 32.2(a), Federal Rules of Criminal Procedure;

 (iv) neither she nor any of her current or future officers, agents, representatives, subrogees, assigns, or successors shall appear in or pursue any action or proceeding at law or in equity to contest the forfeiture of the Forfeitable Assets to the United States;

 (v) should any claimant appear in or pursue or attempt to pursue any civil proceeding to contest the forfeiture of the Forfeitable Assets, the defendant shall provide truthful testimony, affidavits, and statements in such proceedings, regarding her ownership of the Forfeitable Assets, and regarding the status of the Forfeitable Assets

 (vi) She will consent to the entry of any motion for decree of forfeiture consistent with the terms of the Forfeiture Agreement; and

 (vii) she will release and forever discharge the United States of America, the Federal Bureau of Investigation, the Internal Revenue Service, and their officers, agents, servants, and employees, and their heirs, successors, or assigns, from any and all actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and/or demands whatsoever, in law or equity, which he and his heirs, successors, or assigns ever had, now have, or may in the future have in connection with the seizure, detention, forfeiture, and destruction or other disposition by the United States of America of the defendant property

 (viii) She will hold and save the United States of America, the Federal Bureau of Investigation, the Internal Revenue Service, and their officers, agents, servants, and employees, and their heirs, successors, or assigns, harmless from any claims by any others, including costs and expenses for or on account of any and all lawsuits or claims of any character whatsoever, in connection with the seizure, detention, forfeiture, and destruction or other disposition of the defendant property.

### Defendant is Not A Prevailing Party

The defendant also understands and agrees that by virtue of her plea of guilty she waives any rights or cause of action to claim that she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that she has no right to withdraw her guilty

*Matthew Maddox, Esq.*
*Page 6*

plea if her sentence or the Guideline application is other than she anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and her offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on her prompt notification of her intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by: (1) truthfully admitting the conduct comprising the offense of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines; and (2) truthfully disclosing to the United States Attorney's Office and the United States Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which: (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw her guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that she may not withdraw her plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

### Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

*Matthew Maddox, Esq.*
*Page 7*

### Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2S.1. (a)(2) is 12. That level is increased by 2 levels pursuant to U.S.S.G. § 2S.1. (b)(2)(B) as an object of the conspiracy was to conduct financial transactions designed in whole or in part, *inter alia*, to conceal and disguise the nature location, source, ownership and control of the funds, in violation of 18 U.S.C. § 1956. Thus, the defendant's resulting adjusted offense level is a level 14. Two (2) levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 12.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 12, assuming a Criminal History Category I, would result in a range of 10 to 16 months of imprisonment (sentencing table) and a fine range of $5,500 to $55,000, U.S.S.G. § 5E1.2(c)(3); *see also* 18 U.S.C. § 3571(d). The defendant is also subject to a supervised release term of not more than 3 years. U.S.S.G. § 5D1.2; 18 U.S.C. § 3583(b)(2).

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that she will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence

The defendant acknowledges that under certain circumstances she is entitled to challenge her conviction and sentence. The defendant agrees not to appeal or collaterally attack her conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. Nor will she pursue such an appeal or collateral attack to challenge the sentence

*Matthew Maddox, Esq.*
*Page 8*

imposed by the Court if that sentence does not exceed 16 months of imprisonment, a 3-year term of supervised release, a $100 special assessment, a fine of up to $55,000, and an Order of forfeiture of the Forfeitable Assets, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government will not appeal a sentence imposed within or above the stipulated sentencing range.

The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. The defendant acknowledges that she is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentence that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.

The defendant understands that she has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against her, the right not to be compelled to incriminate herself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in her defense. The defendant understands that by pleading guilty she waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if she pleads guilty, the Court may ask her questions about each offense to which she pleads guilty, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making false statements.

*Matthew Maddox, Esq.*
*Page 9*

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that she is entering into this agreement and is pleading guilty freely and voluntarily because she is guilty. The defendant further acknowledges that she is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges her understanding of the nature of the offense to which she is pleading guilty, including the penalties provided by law. The defendant also acknowledges her complete satisfaction with the representation and advice received from her undersigned attorney. The defendant and her undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that she is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights she may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to her with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving her.

## COLLATERAL CONSEQUENCES

The defendant understands that she will be adjudicated guilty of each offense to which she has pleaded guilty and will be deprived of certain rights, such as the right to hold public

*Matthew Maddox, Esq.*
*Page 10*

office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if she is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which she is licensed, or with which she does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of her participation in the conduct that forms the basis of the Indictment in this case. After sentencing, the Government will move to dismiss counts 37 and 39 of the indictment, as the conduct underlying the dismissed counts will have been taken into account in determining the appropriate sentence.

The defendant understands that if, before sentencing, she violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw her guilty plea.

*Matthew Maddox, Esq.*
*Page 11*

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY

The defendant certifies that she has read this plea agreement letter and its attachment(s) or has had it read or translated to her, that she has had ample time to discuss this agreement and its attachment(s) with counsel and that she fully understands and accepts its terms.

_____     10/13/17
JEAN S. ERICKSON                    Date
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____     10/13/17
MATTHEW MADDOX, Esq.                Date
Attorney for the Defendant

*Matthew Maddox, Esq.*
*Page 12*

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that gives rise to the defendant's agreement to plead guilty to the Indictment:

Defendant Jean S. Erickson ("Erickson") was a resident of Connecticut. Sometime in calendar year 2015, Erickson met Thomas J. Connerton *via* social media through an on-line dating site. Connerton represented himself to be the founder, president, and CEO of a company called Safety Technologies, LLC ("Safety Tech"). Erickson began a relationship with Connerton and in 2016 Connerton moved in and began to share a residence with Erickson. In March of 2016, Erickson and Connerton were engaged to be married.

During the relevant time, Erickson operated and controlled bank accounts at financial institutions which were insured by the Federal Deposit Insurance Corporation ("FDIC") and which engaged in, and the activities of which affected, interstate and foreign commerce, including, *inter alia*, First Niagara Bank (now known as Key Bank), and J.P. Morgan Chase.

In or about March of 2016, while they were sharing a residence, Erickson became aware of and thereafter knew that the only source of income that Connerton had to support himself at that time was money that he received and was receiving from the investors who believed they were investing in Safety Tech securities.

On or about May 6, 2016, Connerton received a formal Order of Investigation by the United States Securities and Exchange Commission ("SEC"), and was interviewed under oath by the SEC, Boston Regional Office. Erickson was aware of the formal order and traveled with Connerton to the Boston Regional Office. On or about June 6, 2016, the SEC informed Connerton, through counsel, that among the relief that the SEC could seek was a restraint on assets. On June 8, 2016, both Connerton and Ericson indicated to investigative agents that they were aware a restraint on assets was a possibility.

Beginning in the spring of 2016, and continuing through June of 2016 and thereafter, Connerton and Erickson conspired and agreed with each other to conduct financial transactions through financial institutions, including Erickson's bank, by making deposits and moving money as described below. They engaged in the transactions knowing that the transactions were designed to conceal and disguise the nature, location, source, ownership, and control of the money involved. Erickson and Connerton moved the money through multiple accounts by purchasing multiple bank checks and negotiating those bank checks, and transferring funds from account to account. This was done in an attempt to prevent the authorities and regulators, including the Federal Bureau of Investigation ("FBI") and the SEC, from locating the funds.

On or about May 21, 2016 Connerton used $19,692 in funds that he had fraudulently obtained from investors, and purchased three (3) cashier's checks each in the amount of $5,000 and each payable to Thomas Connerton. On or about June 6, 2016, Erickson deposited the three checks and $1,900 cash that she received from Connerton into her First Niagara account ending in 2146. On or about June 8, 2016, she transferred a total of $16,500 from her account at First Niagara ending in 2146 to her account at First Niagara ending in 3599. Also on June 8, 2016,

*Matthew Maddox, Esq.*
*Page 13*

Erickson withdrew $18,000 from her account at First Niagara ending in 3599 and purchased two (2) teller checks from First Niagara each in the amount of $9,000 and each made payable to the order of Jean Erickson.

Erickson agreed with Connerton to engage in these financial transactions involving funds derived from a specified unlawful activity and agreed to do so – and did so – in an attempt to conceal the nature and source of funds and in an attempt to prevent the authorities and regulators from locating the funds.

Additionally, on or about April 22, 2016 in the District of Connecticut in a matter within the jurisdiction of the Federal Bureau of Investigation, Erickson knowingly and willfully made a materially false statement to a Special Agent from the FBI by stating that she was just an investor of Connerton's and that was her only relationship with Connerton, when in truth and in fact, she was engaged to him and sharing a residence with him at the time. Moreover, in the same conversation, she falsely represented her address to the Special Agent.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional relevant offense conduct to the Court in connection with sentencing.

JEAN S. ERICKSON
The Defendant

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY

MATTHEW MADDOX, Esq.
Attorney for the Defendant

*Matthew Maddox, Esq.*
*Page 14*

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § [3663A ] as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

    A. Return the property to the owner of the property or someone designated by the owner; or

    B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

    The greater of -
    (I) the value of the property on the date of the damage, loss, or destruction; or

    (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

    A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

    C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3614, 3613A. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.